IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANTONIO FLORES, )<br>    ID # 08450-180, )<br>        Movant, )<br> ) | <br><br>No. 3:20-CV-3538-L-BH |
| vs. ) | No. 3:16-CR-279-L(1) |
| ) | |
| UNITED STATES OF AMERICA, )<br>        Respondent. ) | <br>Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 24, 2020 (doc. 2), should be **DENIED** with prejudice.

## I.   BACKGROUND

Antonio Flores (Movant) challenges his federal conviction and sentence in Cause No. 3:16-CR-279-L(1). The respondent is the United States of America (Government).

**A.   Conviction and Sentencing**

After first being charged by complaint with several others, Movant was charged in a three-count indictment with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(C)) (Count One). (*See* docs. 1, 137.)[2] He pled guilty to Count One of the indictment on May 4, 2017, under a plea agreement. (*See* docs. 239, 254.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:16-CR-279-L(1).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 239 at 1.)[3] He agreed that he understood the nature and elements of the crime to which he was pleading guilty, and that the factual resume he signed was true and would be submitted as evidence. (*See id.*) The plea agreement set out the minimum and maximum penalties for Count One and stated that Movant had reviewed the federal sentencing guidelines with counsel, he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and no one could predict with certainty the outcome of its consideration of the guidelines. (*See id.* at 2.) He had thoroughly reviewed all legal and factual aspects of the case with counsel and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 5.) The guilty plea was freely and voluntarily made, and not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id.* at 4.)

At his re-arraignment on May 4, 2017, Movant acknowledged under oath that he understood the rights he was giving up by pleading guilty and that he was waiving his right to appeal except in very limited circumstances. (*See* doc. 418 at 5-7, 16-17.) He affirmed that he had discussed with his attorney how the sentencing guidelines might apply in his case; he understood it was the Court's obligation to calculate the applicable sentencing guideline range and to consider that range and any possible departure under the guidelines or under the sentencing factors of 18 U.S.C. § 3553(a), and his advisory guideline range would not be determined until after a presentence investigation report (PSR) was completed and the parties were given an opportunity to object to the facts and conclusions reported in the PSR. (*See id.* at 8-9.) He also understood the

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2

Court was not bound at sentencing by facts stipulated by the parties and could disregard stipulated facts or consider facts that were not stipulated. (*See id.*) He pled guilty to Count One, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 20-22; docs. 256, 264.)

On July 11, 2017, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 297-1 at ¶ 53.) Based on controlled buys, information provided by a confidential human source (CHS), and drugs found at Movant's residence, the PSR held Movant responsible for a total of 23,668.39 kilograms of marijuana equivalent. (*See id.* at ¶ 47.) Applying the drug quantity table at U.S.S.G. § 2D1.1(c)(3), the PSR calculated a base offense level of 34. (*See id.* at ¶ 54.) Two levels were added for possession of dangerous weapons based on a sale of cocaine and four firearms to CHS 1 and an undercover employee (UCE1). (*See id.* at ¶ 55.) Four levels were added for Movant's role as an organizer or leader in the criminal activity. (*See id.* at ¶ 57.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. (*See id.* at ¶¶ 61-63.) Based on a total offense level of 37 and a criminal history category of II, his guideline imprisonment range was 235 to 293 months. (*See id.* at ¶ 96.) Because the statutory maximum for the offense was 240 months' imprisonment, the guideline imprisonment range became 235 to 240 months. (*See id.*)

On February 23, 2018, Movant objected to the PSR, arguing that he did not sell the marijuana quantities attributed to him in four separate drug transactions, and that his conduct was not sufficient to render him a leader in the conspiracy. (*See* doc. 383.) He claimed he "did not make any managerial decisions and at all times was acting at the direction of others." (*Id.* at 2.) On February 28, 2018, the USPO submitted an addendum to the PSR, where it addressed Movant's objections and supported the PSR as written. (*See* doc. 385-1.)

At his sentencing hearing on March 22, 2018, Movant initially advised the Court that he

was not ready for, and was uncomfortable with, sentencing because counsel had not visited him since November. (*See* doc. 424 at 3-5.) After meeting with counsel during a recess, Movant stated that he was ready to proceed with sentencing. (*See id.* at 9.) The Court found that his objections to the drug quantity amounts attributed to him in the four drug transactions were moot based on his statements that he "never told [counsel] to file any objections regarding the drugs", and that even if it sustained the objections, the base offense level would remain unchanged at 34 considering the remaining drug quantities attributed to him. (*Id.* at 16; *see also id.* at 11, 14-16.) Based on the testimony and argument, the Court overruled the objection regarding the leadership role enhancement. (*See id.* at 17-47.) By amended judgment dated April 17, 2018, Movant was sentenced below the guideline range to 216 months' imprisonment, to be followed by a three-year term of supervised release. (*See* doc. 404 at 1-3.)

Movant's appeal, which challenged the application of guideline enhancements, was dismissed by the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) as barred by the appeal waiver on April 23, 2019. *See United States v. Flores*, 765 F. App'x 107 (5th Cir. 2019). On November 18, 2019, the Supreme Court denied his petition for a writ of certiorari. *See Flores v. United States*, 140 S. Ct. 545 (2019).

**B.**     **Substantive Claims**

Movant asserts the following grounds for relief:

(1) [Counsel] rendered deficient performance when he failed to object to the § 2D1.1(b)(1) dangerous weapon enhancement in the PSR. This prejudiced the defense because it resulted in a 2-point increase in the offense level, which resulted in a 235-293 month sentencing range[ ] instead of a 188-210 month sentencing range; and

(2) [Counsel] Rendered Deficient Performance when He Failed to Present The Court with Transcripts and English Translations (and photographs) of The Government's Video and Audio Recordings in Support of His Objection to The § 3B1.1(a) Four Level Organizer or Leader Enhancement at ¶ 57 of The PSR.

> This Prejudiced The Defense Because, After Applying The Preponderance of Evidence Standard, the Court was Forced into Overruling The Objection on the Ground That [counsel's] Mere Objection Did Not Suffice as Competent Rebuttal Evidence and Increased [Movant's] Offense By Four Levels, which Resulted in a 235-293 Month Sentencing Range, Instead of a 151-188 Month Sentencing Range.

(No. 3:20-CV-3538-L-BH, doc. 2 at 4, 18-19.) The Government filed a response on January 29, 2021. (*See id.*, doc. 5.) Movant filed a reply on March 17, 2021. (*See id.*, doc. 6.)

## II. SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.     **Dangerous Weapon Enhancement**

In his first ground, Movant contends that counsel was ineffective "when he failed to object the [sic] U.S.S.G. § 2D1.1(b)(1) two-level dangerous weapon enhancement (at ¶55 of the PSR) as [Movant] instructed him to do" on two occasions. (No. 3:20-CV-3538-L-BH, doc. 2 at 9; *see also id.*, doc. 2 at 4.) He claims that "the information at ¶31 of the PSR was incorrect because the cocaine, which he sold to CHS [ ] on August 26, 2015, was not sold by him at Garcia's Shop at the same point in time that Vela [(Co-defendant)] sold the rifles to CHS [ ] and [UCE1] because he was called by CHS [ ] to conduct the cocaine transaction only after [UCE1] had already driven off with the rifles in their Chevy Blazer—the gun sale and drug sale, both initiated by CHS [ ], were two separate and distinct transactions conducted by two separate individuals at two distinct points in time."[4] (*Id.*, doc. 2 at 9; *see also id.*, doc. 2 at 15.) He claims that "because the rifles were never present at the same place and point in time that [Movant] sold CHS [ ] the cocaine, U.S.S.G. § 2D1.1(b)(1) is inapplicable." (*Id.*, doc. 2 at 14.)

"The district court's decision to apply a two-level increase under U.S.S.G. § 2D1.1(b)(1) is a factual determination[.]" *United States v. Aguillon-Hernandez*, 845 F. App'x 366, 366 (5th Cir. 2021). A PSR generally "bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (citation and internal quotation marks omitted). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Huerta*, 182 F.3d 361, 364 (5th

---

[4] Notably, despite claiming in his § 2255 filings that the firearms and drugs were sold "at two distinct points in time," he identified who was present, the vehicle CHS and UCE1 were driving when they purchased the firearms, and where they secured the firearms in the vehicle. (*See, e.g.*, No. 3:20-CV-3538-L-BH, doc. 2 at 6-7, 9, 14.)

Cir. 1999) (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). Further, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate, or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Here, the PSR added two offense levels for possession of a dangerous weapon, stating that "[o]n August 26, 2015, the defendant sold the [CHS] and [UCE1] 40.8 grams of cocaine and four firearms." (doc. 297-1 at ¶ 55.) The portion of the PSR discussing August 26, 2015, stated:

> On August 26, 2015, CHS [ ] and [UCE1] attempted to purchase a half-kilogram of cocaine and four rifles from [Movant] and [Co-defendant]. CHS [ ] reported to investigators that [Movant] and [Co-defendant] only had 1½ ounces of cocaine to sell UCE[1] and [Movant] quoted a price of $1,000 for the ounce and $600 for the half-ounce. Investigators provided [UCE1] with $2,500 in cash as buy money for the cocaine and $7,500 in cash in buy money for the guns. After CHS [ ] and [UCE1] met [Movant] and [Co-defendant] at Garcia's Shop, they met investigators in an isolated location at which point the cocaine and four rifles were retrieved from [UCE1]'s vehicle. [UCE1] and CHS [ ] provided details of the controlled buy to investigators and reported [Co-defendant] had the guns in his vehicle. [Co-defendant] initially asked for $7,500 for the four rifles; however, [UCE1] negotiated the price down to $5,500 with the understanding that the next weapons [Co-defendant] provided [UCE1] would be fully automatic. [UCE1] offered [Co-defendant] $200 for a Ruger handgun; however, [Co-defendant] wanted $500 which [UCE1] refused. After [UCE1] purchased the guns from [Co-defendant], [Movant] arrived with the cocaine for which [UCE1] paid $1,600. Both [Movant] and [Co-defendant] acknowledged the cocaine came from [Co-defendant] and [Co-defendant] told [UCE1] the price would get better when [UCE1] purchased larger quantities. [Co-defendant] suggested [UCE1] purchase 5 kilograms of cocaine so that they would both be comfortable and would feel good about the deal. [UCE1] told [Movant] and [Co-defendant] he was looking for "one-stop shopping" for both cocaine and "Ice". [UCE1] paid $500 to [ ], the owner of Garcia's Shop, for allowing the deal to occur at his shop and [Movant] and [Co-defendant] paid the remaining $200. CHS [ ] talked with [Movant] who advised he was upset that [Co-defendant] only paid him $500 from the sale of the four rifles to [UCE1]. He indicated that next time, he wanted [UCE1] to pay him up front for his role.

(*Id.* at ¶ 31.) The information set forth in the PSR was obtained from case filings and FBI investigative reports, and it was supplemented and corroborated through an interview with FBI agents. (*See id.* at ¶ 8.) At the sentencing hearing, the Government presented testimony from the

lead case agent (Agent) in the underlying criminal investigation, who testified that in addition to illegal narcotics, firearms were also sold during the operation, and that Movant was directly involved in the sale of those firearms. (*See* doc. 424 at 22-23.) Accordingly, the application of the dangerous weapon enhancement had an adequate evidentiary basis supported by the record. *See Huerta*, 182 F.3d at 364 (quoting *Puig-Infante*, 19 F.3d at 943).

Aside from speculative and conclusory assertions unsupported by the record regarding the alleged existence and contents of photographs, video recordings, and audio recordings relating to the drug and firearm transactions on August 26, 2015, Movant provides no facts or evidence that the PSR's information was "materially untrue, inaccurate or unreliable," or that refutes Agent's testimony at the sentencing hearing. *Id.*; (*see also* No. 3:20-CV-3538-L-BH, doc. 2 at 11, 14-15.) His conclusory and unsubstantiated statements are insufficient to obtain relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"). He therefore cannot show that counsel was deficient for failing to object to the dangerous weapon enhancement. Nor has Movant offered more than speculation premised on his unsubstantiated assertions about alleged recordings and photographs to show a reasonable probability that his sentence would have been different absent counsel's alleged deficiency. Speculation and conjecture are insufficient to show *Strickland* prejudice. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Even if Movant sold cocaine to CHS after Co-defendant sold firearms to UCE1, and after UCE1 had left with the firearms as alleged, the PSR shows that the drug transaction occurred at the same location as the firearm purchase, and that Movant routinely used this location to conduct other drug transactions. (*See id.* at ¶¶ 11, 13, 15, 19, 31, 35, 41.) The PSR establishes that Movant introduced CHS to Co-defendant, who supplied cocaine and sold firearms. (*See id.* at ¶ 11.) It shows that CHS arranged to purchase firearms from Movant and Co-defendant; CHS met them at a shop that Movant also routinely used to conduct other drug transactions, looked at guns to purchase, and discussed and negotiated a potential drug transaction with Co-defendant in Movant's vehicle. (*See id.* at ¶ 28.) It also shows that CHS subsequently met with Movant and Co-defendant at a restaurant, where drug and firearm transactions were again discussed. (*See id.* at ¶ 29.)

Because these facts independently support the application of the dangerous weapon enhancement, Movant fails to show a reasonable probability that his sentence would have been less harsh had counsel successfully objected to the enhancement as alleged. *See, e.g.*, *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010) (holding that § 2D1.1(b)(1) is satisfied where there is evidence of either personal possession or vicarious possession of a firearm during the offense); *Aguillon-Hernandez*, 845 F. App'x at 367 (holding that the defendant's offer to sell a firearm to a co-conspirator while the co-conspirator was collecting drug proceeds from a place where the defendant distributed drugs was sufficient to apply dangerous weapon enhancement); *United States v. Miles*, 346 F. App'x 993, 994 (5th Cir. 2009) (holding that court did not err in applying dangerous weapon enhancement where "there is evidence that [the defendant's] coconspirator possessed a firearm during the course of the [drug] conspiracy and that [the defendant] saw and heard about the coconspirator's gun). He therefore fails to show *Strickland* prejudice on this additional basis.

Movant has failed to satisfy his burden under both prongs of *Strickland*, and is not entitled to relief under § 2255. His claim should be denied.

**B.     Leadership Role Enhancement**

In his second ground, Movant contends that counsel was ineffective because "[h]e Failed to Present The Court with Transcripts and English Translations (and photographs) of The Government's Video and Audio Recordings in Support of His Objection to The § 3B1.1(a) Four Level Organizer or Leader Enhancement[.]" (No. 3:20-CV-3538-L-BH, doc. 2 at 18-19; *see also id.*, doc. 6 at 2.) Movant argues that he: (1) "never told Jose Flores on 2/5/15 that he would allow him take CHS [ ] to meet Menchaca, at his home or any other place"; (2) "never told CHS [ ] on 3/6/15 that he could pay $500 of the asking price for a kilogram of cocaine at a later date—and because CHS [ ] was $500 short, the deal did not go through"; (3) "did not tell Jose Flores to pick-up money from a marijuana customer on 4/29/15 and take it to [a shop used for drug transactions during the conspiracy]"; (4) did not sell Jose Flores an ounce of cocaine on 5/8/15 and tell him that he was expecting a large marijuana shipment via railcar"; and (5) "did not complete a 21-pound marijuana transaction with Jose Flores on 5/9/15 at [a shop used for drug transactions during the conspiracy]." (*Id.*, doc. 2 at 19-20; *see also id.*, doc. 6 at 3.) According to Movant, if counsel "views the video and photographic evidence, and listens to the audio recordings, he will find that there is absolutely zero evidence that supports the Government's erroneous organizer or leadership enhancement." (*Id.*, doc. 2 at 20; *see also id.*, doc. 6 at 3.) He complains that although counsel objected to the leadership role enhancement, the objection "did not point the court to any of the rebuttal evidence contained in the Government's video and audio recordings, and photographic evidence." (*Id.*, doc. 2 at 20.)

In determining that Movant qualified for a four-level enhancement under U.S.S.G. §

3B1.1(a) for his role as a leader or organizer in the offense, the PSR stated:

> [Movant] exercised decision making authority as a cooperating coconspirator indicated that [Movant] told him/her the amount of money they would receive for each deal and what each person's cut from the deals would be. In addition, he recruited the cooperating coconspirator to sell drugs. Moreover, he allowed CHS [ ] to pay the remainder $500 for a kilogram of cocaine at a later date, signifying decision making authority. Furthermore, the investigation revealed discussions surrounding the cuts [Movant] received from the sale of narcotics and firearms. [Movant] also allowed Jose Flores] to take CHS [ ] to meet Menchaca and [Co-defendant] who are major suppliers of drugs and guns and also connected CHS [ ] to two additional suppliers. Last, [Movant] received shipments of narcotics and instructed Jose Flores to retrieve money from a marijuana customer.

(doc. 297-1 at ¶ 48; *see also id.* at ¶ 57.) In his objections to the PSR, counsel challenged the "assertion that [Movant's] conduct was sufficient to describe him as leader in the conspiracy," and argued that Movant "did not make any managerial decisions and at all times was acting at the direction of others." (doc. 383 at 2.) Addressing Movant's objections to the enhancement, the USPO issued a PSR supplement in which it reiterated the bases set forth in the PSR to support the enhancement. (*See* doc. 385-1 at 2.)

At the sentencing hearing, Agent testified that "whenever our source began to work with [Movant], he would instruct us on where to meet. We would meet with him, and . . . who he would allow us to meet as his source." (doc. 424 at 19-20.) He testified that coconspirator Jose Flores took direction from Movant; Movant was "instrumental" in the participation and planning of the conspiracy because he "would introduce our source to the source of supply that would supply us with the drugs, . . . would indicate the locations where the exchanges were to take place, and basically negotiate the deals"; Movant was directly implicated in the sale of marijuana, methamphetamine, cocaine, and firearms; they had to go to Movant to get large drug quantities from suppliers; and all of the drug transactions he could think of went through Movant. (*Id.* at 21-25.) He also testified that "[d]uring most all of our operations we used an audio recording device

to record conversations"; there were audio recordings in which Movant gave CHS or others instructions or directed them where to meet; and audio recordings of meetings between CHS and Movant could verify the information reported by CHS to investigators. (*Id.* at 27-29.) Counsel argued at sentencing that the PSR and Agent's testimony were not supported by any evidence showing that Movant made any decisions in the conspiracy or that his role was anything other than transmitting information from one person to another. (*See id.* at 35-37, 40-41.)

Movant has provided no evidence showing that the PSR's information relating to the leadership role enhancement was "materially untrue, inaccurate or unreliable," or rebutting Agent's testimony.[5] *Huerta*, 182 F.3d at 364. He instead provides only conclusory denials of some, but not all, of the portions in the PSR and Agent's testimony relating to the leadership role enhancement, as well as unsubstantiated allegations regarding the existence and contents of alleged video, audio, and photographic evidence to support his claim.[6] (*See, e.g.*, No. 3:20-CV-3538-L-BH, doc. 2 at 24, 28.) His conclusory and unsubstantiated allegations, unsupported by evidence in the record, are insufficient to obtain relief. *See Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011; *Koch*, 907 F.2d 524. He therefore cannot show that counsel was deficient for failing to further

---

[5] Movant also alleges that Agent's testimony regarding an incident during which Movant allowed CHS to pay $500 remaining on a drug transaction at a later date was inconsistent with the PSR. (*See* No. 3:20-CV-3538-L-BH, doc. 2 at 26.) Both the PSR and Agent's testimony establish that an outstanding $500 was owed by CHS on a cocaine transaction and that Movant allowed CHS to pay the $500 at a later time. (*See* doc. 297-1 at ¶¶ 17-21, 48; doc. 424 at 29.) Movant admits that Agent's testimony on this point was true. (*See* No. 3:20-CV-3538-L-BH, doc. 2 at 26.) Movant fails to show that any inconsistency between Agent's testimony and the PSR regarding the outstanding $500 was "*materially* untrue, inaccurate, or unreliable." *Huerta*, 182 F.3d at 364 (emphasis added). Accordingly, his claim does not warrant § 2255 relief on this basis.

[6] Aside from conclusory allegations, Movant has not shown that any video or photographic evidence relating to his offense exists at all, much less that such evidence documents anything related to the bases justifying the sentencing enhancements. Agent testified that when CHS met with Movant or his co-conspirators during the investigation, "[u]sually during those meetings we [Agent and/or squad members] were on surveillance around the locations and was [sic] usually watching them from afar," and that during "most all of our operations," they used an audio recording device; he did not testify about any video or photographic evidence, however. (doc. 424 at 19, 27.) Additionally, neither the PSR nor its supplement reference any such evidence. (*See generally* docs. 297-1, 385-1.)

13

challenge the leadership enhancement by providing alleged video, audio, and photographic evidence, along with transcripts and translations of same, during sentencing. Accordingly, he fails to satisfy the first *Strickland* prong.

Even assuming for purposes of this motion only that counsel rendered deficient performance by not producing alleged video, audio, and photographic evidence with respective transcripts and translations, Movant also fails to show *Strickland* prejudice. He does not provide any evidence beyond conclusory denials and bald assertions about the contents of the alleged video, audio, and photographic evidence to show that his sentence would have been less harsh absent counsel's alleged deficiency; his speculation and conjecture are insufficient to sustain his burden under *Strickland*. *See, e.g.*, *Ross*, 694 F.2d at 1011; *Miller*, 200 F.3d at 282.

Because Movant has not satisfied both *Strickland* prongs, he is not entitled to § 2255 relief, and his claim should be denied.[7]

## C. **Expert Witnesses**

In his second ground, Movant also contends that counsel was ineffective "when he failed to subject the information at ¶¶ 14, 17, and 22 of the PSR, which was used to justify the Government's § 3B1.1(a) four-level organizer or leader enhancement at ¶ 57 of the PSR, to an

---

[7] Movant states that "because Ground Two stands firmly on whether the Government's audio and video recordings correctly reflect the information in the relevant portions of the PSR, [Movant] moves the court for an order requiring that [counsel] and the Government provide him with copies of the audio and video recordings relevant to his objection to the drug quantity in the PSR, supra, and his objection to the dangerous weapon enhancement, and his objection to the leadership enhancement." (No. 3:20-CV-3538-L-BH, doc. 2 at 29-30.) To support his request, he relies on his subjective belief and conclusory and speculative allegations that such evidence, to the extent it exists, contradicts the PSR and Agent's sworn testimony about Movant's role in the offense and the contents of audio recordings from the investigation. (*See id.*, doc. 2 at 28-29.) The Rules Governing Section 2255 Proceedings for the United States District Courts do not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004) ("Conclusional allegations are insufficient to warrant discovery[.]"). Nor can Movant use "an evidentiary hearing [as] a 'fishing expedition' for him to find support to validate his allegations." *United States v. Franks*, 397 F. App'x 95, 101 (5th Cir. 2010) (citing *United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006)). Movant fails to show that he is entitled to discovery or an evidentiary hearing on this ground, and his claim should be denied.

independent investigation by engaging video and audio recordings forensic experts, and photographic forensic experts, to analyze and transcribe (and translate into English) the Government's video and audio recordings, and photographic evidence, to prove that none of the Government's video and audio recordings captured [Movant] engaging in conduct indicative of an organizer or leader[.]" (No. 3:20-CV-3538-L-BH, doc. 2 at 23; *see also id.*, doc. 2 at 11.) He claims that if counsel had "conducted this basic investigation . . ., the Court would have sustained the objection and not applied the four-level organizer or leader enhancement on the ground that the forensic analysis (and transcription and translation into English) of the Government's video and audio recordings evidence that [Movant] was just following orders and doing exactly what CHS [ ] asked him to do." (*Id.*, doc. 2 at 24.) These allegations may be liberally construed as a claim that counsel failed to retain and call forensic experts to challenge the leadership enhancement.

"[C]omplaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day,* 566 F.3d at 538; *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). "This requirement applies to both uncalled lay and expert witnesses." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *see also Day*, 566 F.3d at 538 (citing in part *Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002) (rejecting uncalled expert witness claim where the petitioner failed to present evidence of what a scientific expert would have stated)).

Here, Movant offers only conclusory and speculative allegations regarding the existence and contents of alleged video, audio, and photographic evidence relating to his sentence enhancements, as discussed. He also fails to name any expert, demonstrate that the expert was available and would have provided testimony, or shown that any such expert's testimony would have supported his theory. *See Day*, 566 F.3d at 538. He therefore has failed to satisfy his burden under *Strickland* to establish ineffective assistance of counsel for failing to retain and call any experts.[8] This conclusory claim should be denied.

**D.     Other Claims**

Movant also appears to argue that counsel was ineffective because he: (1) had Movant "waive his right to a detention hearing and a probable cause hearing"; (2) had Movant "waive his right to have the charges in the indictment read in open court" at the arraignment hearing; (3) had Movant agree to the plea agreement and its terms; (4) had Movant waive his right to plead guilty before the assigned district judge and waive "his right to have the Factual Resume and the charges in the indictment read in open court" at the re-arraignment hearing; and (5) "told the Court that [Movant] was mentally ill and unstable" and called him a "mental invalid" at the sentencing hearing. (No. 3:20-CV-3538-L-BH, doc. 2 at 11, 15, 29; *see also id.*, doc. 6 at 6.)

For each of these claims, Movant fails to allege or show a reasonable probability that the result of the proceedings would have been different or that his sentence would have been less harsh if not for counsel's alleged deficiencies. He therefore fails to show *Strickland* prejudice, and because his allegations fail to demonstrate *Strickland* prejudice, the performance prong need not

---

[8] To the extent Movant's allegations can be liberally construed to assert an independent claim of ineffective assistance of counsel based on a general failure to investigate the alleged video, audio, and photographic evidence, the claim fails because it is premised on conclusory, speculative, and unsubstantiated allegations regarding the existence and contents of such alleged evidence, as discussed. (*See* No. 3:20-CV-3538-L-BH, doc. 2 at 11, 14-15.) Accordingly, to the extent considered, this claim does not warrant § 2255 relief and should be denied.

be addressed. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). To the extent considered, these claims should be denied.

## IV.     EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court on his claims. (*See* No. 3:20-CV-3538-L-BH, doc. 2 at 30; *id.*, doc. 6 at 6.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Here, Movant has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## V.     RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 24, 2020 (doc. 2), should be **DENIED** with prejudice.

**SIGNED this 24th day of October, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE